**In the Matters of Alvin Norval LUTH and Virginia Adele Luth, husband and wife, Debtors.**

**In re WORLEY GRAIN COMPANY, INC., Debtor.**

**Bankruptcy Nos. 82–00938, 82–00937.**

United States Bankruptcy Court, D. Idaho.

March 28, 1983.

Bliss O. Bignall, Jr., Coeur d'Alene, Idaho, for debtors.

Bruce A. Charawell, of Aitken, Schauble, Patrick, Neill, Charawell & Kaufman, Pullman, Wash., and John R. Porter, Moscow, Idaho, for Palouse Producers, Inc.

1. Note, however, that a multi-debtor petition for relief is not countenanced by the Code as an *initial* matter except for spousal petitions. 11

M.S. YOUNG, Bankruptcy Judge.

This matter is presently before the court upon the motion of Palouse Producers for "substantive consolidation" of the above captioned cases. By this motion, Palouse Producers seeks the merger of the assets and liabilities into a single bankruptcy proceeding.[1] Palouse Producers is scheduled as an unsecured creditor in the chapter 11 proceeding of *Worley Grain Co., Inc.,* No. 82–00937.

Palouse Producers has also filed a motion to "intervene as a creditor" in the chapter 11 proceeding of Alvin and Virginia Luth, No. 82–00938, and has, in conjunction therewith, filed an unsecured claim in that proceeding in the amount of $125,357.29. These matters are not presently at issue.

A number of hearings have been held on this motion. No formal objection to the motion for consolidation of these two chapter 11 proceedings has been filed, however, debtor-in-possession Alvin Luth has opposed the motion.

Bankruptcy Rule 117 provides:

### CONSOLIDATION OR JOINT ADMINISTRATION OF CASES PENDING IN SAME COURT

(a) *Cases Involving Same Bankrupt.* If 2 or more petitions are pending in the same court by or against the same bankrupt, the court may order consolidation of the cases.

(b) *Cases Involving 2 or More Related Bankrupts.* If 2 or more petitions are pending in the same court by or against (1) a husband and wife, or (2) a partnership and one or more of its general partners, or (3) 2 or more general members of a partnership, or (4) a bankrupt and an affiliate, the court may order a joint administration of the estates. Before making such an order, the court shall give due consideration to the protection of creditors of the different estates against potential conflicts of interest.

U.S.C. § 302; *Fitzgerald v. Hudson,* 29 B.R. 3 (Bkrtcy.D.Id.1982).

(c) *Expediting and Protective Orders.* When an order for consolidation or joint administration of 2 or more cases is entered pursuant to this rule, the court, while protecting the rights of the parties under the Act, may make such orders as may tend to avoid unnecessary costs and delay.

While the rule speaks of both "consolidation" and "joint administration", the distinction is less than clear. The Advisory Committee's Note to Rule 117 elaborates:

"Consolidation of cases implies a unitary administration of the estate and will ordinarily be indicated under the circumstances to which subdivision (a) applies. This rule does not deal with the consolidation of cases involving 2 or more separate bankrupts. Although consolidation of the estates of separate bankrupts may sometimes be appropriate, as when the affairs of an individual and a corporation owned or controlled by him are so intermingled that the court cannot separate their assets and liabilities, such consolidation, as distinguished from joint administration, is neither authorized nor prohibited by this rule since the propriety of consolidation depends on substantive considerations and affects the substantive rights of the creditors of the different estates.

. . . . .

Joint administration as distinguished from consolidation may include combining the estates by using a single docket for the matters occurring in the administration, including the listing of filed claims, the combining of notices to creditors of the different estates, and the joint handling of other purely administrative matters that may aid in expediting the cases and rendering the process less costly."

[citations omitted]

The above language has led to the creation of the term "substantive consolidation" in order to distinguish that concept from joint "administration" of two estates otherwise remaining separate proceedings under title 11. As noted by the court in *In re Manzey Land & Cattle Co.,* 17 B.R. 332, 337, 5 CBC2d 1481 (Bkrtcy.D.S.D.1982):

"A substantive consolidation is when 'the assets or liabilities of different entities are consolidated and dealt with as if the assets were held by, and the liabilities were incurred by, a single entity.' (See 5 Collier on Bankruptcy, p. 1100–32 (15th Ed., 1980).) The Court in *In re Tito Castro Const., Inc.,* 14 B.R. 569, 571 (Bkrtcy., D. Puerto Rico 1981), stated: 'The major purpose in a substantive consolidation is "to pool assets and liabilities and to eliminate inter-entity claims."' The Advisory Comment to Bankruptcy Rule 117 provides substantive consolidation is neither authorized nor prohibited by the rule. 11 USC § 105(a) provides the Court general equitable powers to consolidate substantively."

A number of "elements" should be evaluated where consolidation of an individual debtor's estate with an affiliated corporation's estate is sought, including the presence or absence of consolidated business or financial records; the unity of interests and ownership between the debtors; the existence of inter-entity transactions; the existence of transfers of assets without observance of corporate or other legal formalities; the comingling of assets and business functions; the degree of difficulty in segregating and ascertaining separate assets and liabilities; and the administrative benefits to be derived from consolidation. See generally *In re Vecco Construction Industries,* 4 B.R. 407, 2 C.B.C.2d 216 (Bkrtcy.E.D.Va. 1980); *In re Richton International Corp.,* 12 B.R. 555 (Bkrtcy.S.D.N.Y.1981); *In re Lewellyn,* 26 B.R. 246, 7 C.B.C.2d 1060 (Bkrtcy. S.D.Iowa 1982).[2]

**2.** While the court in *Lewellyn* generally discusses the same elements as other cases concerning consolidation, it refers to § 302(b) as authority for consolidation in situations such as that presented here. I believe that section is inapplicable since it concerns only consolidation of "joint cases" under § 302(a), i.e. commenced "by an individual that may be a debtor under such chapter and such individual's

*In re Snider Bros., Inc.,* 18 B.R. 230 (Bkrtcy.D.Mass.1982) identifies another element, which on occasion may be controlling.

"While several courts have recently attempted to delineate what might be called 'the elements of consolidation', . . . I find that the only real criterion is that which I have referred to, namely the economic prejudice of continued debtor separateness versus the economic prejudice of consolidation. There is no one set of elements which, if established, will mandate consolidation in every instance. Moreover, the fact that corporate formalities may have been ignored, or that different debtors are associated in business in some way, does not by itself lead inevitably to the conclusion that it would be equitable to merge otherwise separate estates." *Id.* at 234 [citations omitted].

Those courts focusing primarily upon the factual or legal relationships between separate debtors have also generally noted this requirement, that is, whether consolidation will "yield an equitable treatment of creditors without any undue prejudice to any particular group." *Manzey Land & Cattle, supra,* 17 BR at 338, citing *Richton International, supra,* 12 BR at 558.

■ Palouse Producers has sufficiently established all of the requisite elements. The weight of the evidence presented indicates that corporate formalities were not observed in regard to Worley Grain Company. The records of the corporation are essentially bare between the August, 1980, incorporation date and May, 1982, when the corporation decided to seek relief under the Code. What records do exist are incomplete. There is no evidence indicating sufficient capitalization of the corporate enterprise. Alvin Luth received stock, the only stock ever issued, for an intended transfer to the corporation of grain elevators and related property owned by Luth. No record exists, however, substantiating that this transfer ever occurred. These assets were encumbered by liens securing personal obligations of Luth. Business affairs were commingled to some degree, including the use

spouse." The only statutory authority for con-

at times subsequent to incorporation of checks identical to those used previously, imprinted "Worley Grain Co. Alvin N. Luth —Owner—Operator." While there was apparently some effort made to keep the financial records of the Luth's farming operation separate and distinguishable from those of the corporation, including entries reflecting inter-entity debts, there is a very real difficulty in separating the liabilities of the two businesses. This fact is evidenced by the notation made by Luths on their schedules, to wit:

"NOTE: INASMUCH AS MANY OF THE CREDITORS OF WORLEY GRAIN COMPANY INC. MAY BE CREDITORS ALSO OF PETITIONERS HEREIN, WE ARE NOTIFYING EACH AND EVERY ONE OF THEM AS PER ATTACHED LIST.

HOWEVER, THESE CLAIMS ARE ALL DISPUTED, UNTIL PROVED OTHERWISE."

The record establishes that some creditors treated the two entities as indistinguishable, and in particular that Palouse Producers treated Worley Grain Company as nothing more than Luth's trade name, even after its incorporation the occurrence of which was not known by Palouse Producers. It also appears that Luth personally owed Worley Grain Company substantial sums far in excess of other customers of the business, which debt is the largest remaining "asset" of Worley Grain. It is uncontroverted that Luth was the sole stockholder, president, and manager/operator of the corporation.

A review of the record indicates that, following the sale of the elevators and equipment earlier in the Worley Grain Company proceeding, almost three-fourths of the remaining assets consist of the unsecured debt owed the corporation by Luth. The bulk of the remaining asset value in Worley Grain consists of an account receivable owed the corporation by another chapter 11 debtor, Coast Trading Company. This account receivable is of doubtful value.

solidation is provided by § 105 of the Code.

Because the elevators and related equipment comprising the primary assets of Worley Grain Company have been sold, further business operations appear unlikely.

The likelihood of creditors of Worley Grain receiving a dividend are small or non-existent should consolidation be denied. The infusion of the debts of Worley Grain into the Luth proceeding, with the concomitant infusion of only minimal "assets", might have a negative effect on the position of the other unsecured creditors of Luth if any of the Worley Grain creditors relied on that corporation alone for payment of the obligations owed them. However, the evidence presented herein would support allowance of the claim of Palouse Producers in the Luth proceeding in the absence of consolidation. This evidence also infers that the other claimants in Worley Grain are in essentially the same position as Palouse Producers, and can file allowable claims in Luth. If there are creditors who relied solely in Worley Grain, they are small in number and amount, and the effect on Luth creditors would be slight.

Notice to all creditors in both proceedings is a prerequisite for consolidation. See, Seligson and Mandell, "Multi-Debtor Petition—Consolidation of Debtors and Due Process of Law," [New York] Bankruptcy Bar Bulletin, Vol. 3, No. 2 (June, 1968), reprinted at 73 Commercial Law Journal 341 (1968). Here, such notice of the motion to consolidate was given and no objection to consolidation has been received from any creditor.

Creditors in both proceedings appear similarly situated and it would be equitable to treat them the same. The advantages of consolidation outweigh any possible prejudice to creditors. The prerequisites discussed above for consolidation are established. Now, therefore, the motion is granted.