### In re David A. CRABTREE, Debtor.

### Bankruptcy No. 3-83-01116.

United States Bankruptcy Court, E.D. Tennessee.

March 23, 1984.

---

Cadwalader, Wickersham & Taft, Murray Drabkin, Mark C. Ellenberg, Washington, D.C., Walker & Walker, P.C., John A. Walker, Jr., Mary C. Walker, Knoxville, Tenn., for trustee Norwood.

Zusmann, Small, Stamps & White, S.J. Zusmann, Jr., Atlanta, Ga., Ritchie, Chadwell & Eldridge, P.C., Robert W. Ritchie, Wilson S. Ritchie, P.C., Wilson S. Ritchie, Knoxville, Tenn., for debtor Crabtree.

Morton, Lewis, King & Krieg, Mary M. Farmer, Knoxville, Tenn., for Federal Deposit Ins. Corp.

Heiskell, Donaldson, Bearman, Adams, Williams & Kirsch, Craig J. Donelson, Knoxville, Tenn., for First Tennessee Bank.

CLIVE W. BARE, Bankruptcy Judge.

ORDER GRANTING APPLICATION OF CREDITORS TO AMEND INVOLUNTARY PETITION UNDER CHAPTER 7 (WEST KNOXVILLE INVESTMENT COMPANY, INC.)

## ORDER NO. 72

This matter came on for hearing on February 24, 1984, upon the Application of Creditors to Amend Involuntary Petition under Chapter 7 (West Knoxville Investment Company, Inc.); upon the Objection and Response to Application of Creditors to Amend Involuntary Petition under Chapter 7 and Request for Hearing of Debtor, David A. Crabtree; upon the testimony in open court of Francis W. Norwood, Trustee, Michael F. Stalls of First Tennessee Bank, Knoxville, and J. David Lewis of the Federal Deposit Insurance Corporation; upon the statements and arguments of counsel for the creditors, counsel for Francis W. Norwood, Trustee, and counsel for debtor, David A. Crabtree; and upon the entire record in this cause, from all of which the court makes the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

(1) This hearing was held pursuant to notice by publication in accord with this court's order of January 30, 1984. Notice by publication was given, as evidenced by the affidavit of publication (Exhibit No. 5).

(2) No creditor filed an objection to the application or request for a hearing, and no creditor appeared at the hearing to object to the relief sought in the application.

(3) West Knoxville Investment Company, Inc., is the *alter ego* and instrumentality of debtor, David A. Crabtree, because:

(a) Crabtree has owned 100% of the shares of West Knoxville Investment Company, Inc., since it was incorporated in 1976, and he has been its president and in total control of the corporation since its inception;

(b) Crabtree and West Knoxville Investment Company, Inc., formerly shared the same business address (Suite 2136, Plaza Tower, 800 South Gay Street, Knoxville Tennessee 37929);

(c) Crabtree has provided his personal guaranty for debts of West Knoxville Investment Company, Inc. He gave his undated continuing guaranty for the payment of any indebtedness incurred by West Knoxville Investment Company, Inc., to United American Bank in Knoxville, the predecessor in interest to First Tennessee Bank, Knoxville, up to an amount of $5,000,000.00 (Collective Exhibit No. 11); Crabtree also gave his continuing guaranty to City and County Bank of Knox County for the payment of any indebtedness incurred by "West Knox Investment" up to the sum of $3,000,000.00 (Collective Exhibit No. 23); and he further gave his continuing guaranty, in an unlimited amount, for the payment of any indebtedness incurred by West Knoxville Investment Company, Inc. to United American Bank of Nashville (Collective Exhibit No. 23);

(d) The proceeds from loans made to West Knoxville Investment Company, Inc. by United American Bank in Knoxville, the predecessor in interest to First Tennessee Bank, Knoxville, were used to pay obligations of Crabtree at United American Bank in Knoxville (Exhibit Nos. 7, 9, and 10);

(e) The proceeds from loans made to West Knoxville Investment Company, Inc. were deposited directly into the bank account of Crabtree (Collective Exhibit Nos. 24 and 25);

(f) Corporate forms and formalities usually observed by an independent corporation were not observed by West Knoxville Investment Company, Inc. For example, since September, 1982, there have been no entries in the corporate minute books (Exhibit No. 1);

(g) Crabtree used West Knoxville Investment Company, Inc. as a nominee to obtain loans from financial institutions

which either employed him or in which he had an ownership interest;

(h) West Knoxville Investment Company, Inc., was not independently credit worthy and could not have obtained such loans but for its relationship to Crabtree and his connections with the lending institutions; and;

(i) To the extent that creditors of Crabtree and West Knoxville Investment Company, Inc. can be determined, it appears that almost all, if not all, of the creditors of West Knoxville Investment Company, Inc. are creditors of Crabtree.

(4) Because Crabtree is no longer directing or funding its operations, West Knoxville Investment Company, Inc. presently is unable to pay its debts as they become due. Numerous lawsuits have been filed recently against West Knoxville Investment Company, Inc. (Exhibit Nos. 2, 3 and 4).

(5) The affairs of Crabtree and West Knoxville Investment Company, Inc., are so intermingled and entwined that their separate assets and liabilities cannot be ascertained, and any attempt to separate their financial affairs would consume substantial assets of the estate with no considerable likelihood that such an exercise would be successful. This is especially true with regard to the use of West Knoxville Investment Company, Inc. to borrow proceeds to pay obligations of Crabtree. In the absence of books and records for Crabtree and West Knoxville Investment Company, Inc., it is not possible to determine whether West Knoxville Investment Co., Inc. and the debtor, David A. Crabtree, acted at arms' length.

(6) Because the affairs of Crabtree and West Knoxville Investment Company, Inc. are so intermingled and entwined, and due to Crabtree's refusal to provide complete books and records for both himself and West Knoxville Investment Company, Inc., no trustee could accurately prepare a statement of financial affairs and schedules or administer West Knoxville Investment Company, Inc. as a separate entity and estate.

(7) Crabtree has generally denied but not otherwise controverted either the petitioning creditors' allegations or the proof adduced at the hearing; instead he has invoked his constitutional privilege against self-incrimination. (See Debtor's Objection and Response filed February 21, 1984.)

## CONCLUSIONS OF LAW

### A. *Authority To Grant Leave to Amend*

■ This court has jurisdiction to grant leave to amend the involuntary petition *nunc pro tunc* to July 14, 1983, to show that the debtor, David A. Crabtree, is also known as and doing business as West Knoxville Investment Company, Inc. The amended petition does not add a second debtor to this case, but rather reflects the reality that West Knoxville Investment Company, Inc. is simply Crabtree's *alter ego* and an instrumentality used by him to conduct his financial affairs.

■ The court can permit inclusion of West Knoxville Investment Company, Inc. in the caption of the petition pursuant to a motion by creditors. Debtor claims that the proper procedure for piercing the corporate veil and adding West Knoxville Investment Company, Inc. is for creditors to first file an involuntary petition against West Knoxville and then move to consolidate the cases. Although debtor's suggested procedure is acceptable, it is not the exclusive means by which creditors of a debtor can add alter egos to the petition. See *In re 1438 Meridian Place, N.W., Inc.,* 15 B.R. 89 (Bkrtcy.D.D.C.1981); *In re Auto-Train Corp.,* No. 80–00391 (Bankr.D. D.C. November 21, 1980) (order permitting amendment of voluntary petition). In *Auto-Train,* after a contested hearing, the court granted the trustee's motion to amend the petition *nunc pro tunc* to include a corporation that was the debtor's alter ego. In *Meridian,* creditors of a single corporate debtor in possession successfully sought to amend the caption of the voluntary debtor's petition by adding the names of two individuals and seven additional corporations.

The court in *Meridian* rejected the debtor's argument that the creditors should have filed involuntary petitions against the two individuals and the other corporations. It was not necessary for the creditors to prove that they could bring successful involuntary petitions against the parties they sought to add. Indeed, the court specifically stated that the creditors of 1438 Meridian could not have so brought successful involuntary petitions because they were creditors only of 1438 Meridian, not of the two individuals or seven other corporations. *Meridian*, 15 B.R. at 95. The *Meridian* court based its decision permitting amendment on the creditors' "right to bring additional parties before the Court where it is alleged that such parties are, in fact, the alter ego of the debtor." *Meridian*, 15 B.R. at 96.

Similarly, the creditors of David A. Crabtree are entitled to bring West Knoxville into this case simply because it is his *alter ego* and instrumentality.[1] Further, its assets are properly part of his estate.

Furthermore, no apparent or demonstrative prejudice results to the debtor or creditors by virtue of allowing the creditors to amend the caption in this proceeding rather than requiring them to file a new, separate petition against West Knoxville Investment Company, Inc. As stated in *In re Miller*, 262 F.Supp. 298 (E.D.Ill.1967):

> The Court fails to see any merit in the bankrupt's contention that the additional acts of bankruptcy set forth in the amendment could only be raised by the filing of a Creditors' Petition in an entirely new bankruptcy proceeding. If the bankrupt has any defenses ..., he can raise them as well in the existing bankruptcy proceeding as he could have in any bankruptcy proceeding that the creditors would have been compelled to file if the Referee had not permitted the filing of the amendment.... If he has no defense, then it would actually have been a waste of the bankrupt's assets for the

Referee to have denied the amendment and thereby put the creditors to the expense of instuting an entirely new bankruptcy proceeding....

*Id.* at 300. *See also Meridian*, 15 B.R. at 97–98 (no prejudice to creditors).

■ The petitioning creditors have demonstrated that West Knoxville is unable to pay its debts as they become due. Such evidence is unnecessary since the creditors are amending the caption rather than instituting a separate proceeding under 11 U.S.C.A. § 303 (1979). See *Meridian*, 15 B.R. at 95–96 (evidence not required that each alter ego corporation was insolvent or unable to pay its debts as they became due). If, however, such proof is necessary, the creditors carried their burden. In any event, West Knoxville is Crabtree's *alter ego* and will be treated as the same entity for purposes of this proceeding.

Crabtree was given adequate notice that the hearing on February 24, 1984, would encompass all issues necessary for the court to determine the propriety of adding West Knoxville Investment Company, Inc. If he desired to introduce evidence concerning West Knoxville's ability to pay its debts as they became due, he should have done so at that hearing.

The procedural mechanism of amending the petition is proper. Amendments to bankruptcy petitions are not infrequent, both before and after action on the original petition. *See, e.g., In re Charmar Inv. Co.*, 475 F.2d 560 (6th Cir.1973), *cert. denied*, 414 U.S. 823, 94 S.Ct. 123, 38 L.Ed.2d 56 (1973); *Blankenship v. Citizens Nat'l Bank*, 431 F.2d 569 (5th Cir.1970); *In re Precision Transformer Corp.*, 333 F.2d 758 (7th Cir.1964); *In re Country Woods Estates, Inc.*, 3 B.R. 721 (E.D.N.Y.1980).

Indeed, the Bankruptcy Rules specifically permit amendments to a voluntary petition until such time as the case is closed. Bankr.Rule 1009. Since a voluntary petition constitutes an order for relief, 11 U.S.

---

1. This right is independent of the right of creditors of West Knoxville Investment Company, Inc. (whether or not the same parties) to force that corporate entity into bankruptcy pursuant to 11 U.S.C.A. § 303 (1979).

C.A. § 301 (1979), all amendments to voluntary petitions occur after an order for relief has been entered.

▇ The fact that an order for relief has already been entered herein does not deprive this court of authority to grant leave to amend the petition. Courts have granted petitioning creditors leave to amend involuntary petitions after action has been taken on the original petitions. In *In re Patrick*, 194 F.2d 750 (7th Cir.1952), the court noted that an involuntary petition, pursuant to which the debtor was adjudged a bankrupt on March 3, 1950, had been filed on February 14, 1950. On October 30, 1950, the court confirmed an amended petition for an arrangement under Chapter XI of the Bankruptcy Act of 1898, after acceptance by a majority of creditors. Thus, in *Patrick*, an amended petition was accepted *after adjudication* of the original petition.

Another line of cases also provides authority for permitting amendment of an involuntary petition after the court has already acted on the original petition. In *In re Charmar Inv. Co.*, 475 F.2d 560 (6th Cir.1973), *cert. denied*, 414 U.S. 823, 94 S.Ct. 123, 38 L.Ed.2d 56 (1973), the Sixth Circuit held that, pursuant to its general equity powers, the bankruptcy court has jurisdiction "to set aside an order dismissing the petition for defects in the pleading and later to reinstate the proceedings to permit an amendment of the pleadings." *Id.* at 563, *citing Kroell v. New York Ambassador, Inc.*, 108 F.2d 294, 296 (2d Cir. 1939) (well settled that court may permit amendments of involuntary proceedings.). *See also Saalfrank v. O'Daniel*, 533 F.2d 325, 330 (6th Cir.1976), *cert. denied*, 429 U.S. 922, 97 S.Ct. 319, 50 L.Ed.2d 289 (1976) (Fed.R.Civ.P. 15 may in certain circumstances, permit amendment after judgment and a realignment of parties).

Thus, precedent exists both for permitting an amendment to an involuntary petition after an order for relief has been entered and for permitting an amendment of the caption of the petition to include an alter ego of the debtor, rather than requir-

ing separate petitions. The court concludes that the petitioning creditors' application is appropriate.

B. *Alter Ego Status*

▇ When the affairs of two parties such as debtor, David A. Crabtree, and West Knoxville Investment Company, Inc. are so entwined as to make it impossible to administer them as separate entities, a court may regard them as one for purposes of the bankruptcy proceeding. "When one legal entity is but an instrumentality or alter ego of another, by which it is dominated, a court may look beyond form to substance and may disregard the theory of distinct legal entities in determining ownership of assets in a bankruptcy proceeding." *In re Eufaula Enterprises, Inc.*, 565 F.2d 1157, 1161 (10th Cir.1977); *See also In re Continental Vending Machine*, 517 F.2d 997, 1000 (2d Cir.1975); *cert. denied*, 424 U.S. 913, 96 S.Ct. 1111, 47 L.Ed.2d 317 (1976) (bankruptcy court has equitable power to consolidate, disregarding separate corporate entities, to reach assets to satisfy debts of a related corporation); *Chemical Bank New York Trust Co. v. Kheel*, 369 F.2d 845, 847 (2d Cir.1966) (interrelationships "hopelessly obscured" and expense to unscramble, if possible, substantial); *Soviero v. Franklin Nat'l Bank*, 328 F.2d 446, 448 (2d Cir.1964) (consolidation appropriate due to flagrant disregard of corporate forms); *Matter of Lewellyn*, 26 B.R. 246 (Bkrtcy.S.D.Iowa 1982) (estate of individual debtor consolidated with estate of corporation of which debtor was sole stockholder and manager); *In re G & L Packing Co.*, 20 B.R. 789 (Bkrtcy.N.D.N.Y.1982), wherein the court states, "Efforts to disregard corporate entities under equitable doctrines, e.g., 'mere instrumentality rule' and 'alter ego,' are frequently interposed in bankruptcy proceedings." *Id.* at 804–805.

In *Matter of Luth*, 28 B.R. 564 (Bkrtcy. D.Idaho 1983), the court considered the following elements in deciding whether the assets and liabilities of an individual debtor and an affiliated company should be consolidated and treated as one:

(1) presence or absence of consolidated business or financial records;

(2) unity of interests and ownership between the debtors;

(3) existence of inter-entity transactions;

(4) existence of transfers of assets without observance of corporate or other legal formalities;

(5) commingling of assets and business functions;

(6) degree of difficulty in segregating and ascertaining separate assets and liabilities;

(7) administrative benefits to be derived from consolidation; and

(8) whether consolidation will "yield an equitable treatment of creditors without any undue prejudice to any particular group." (citation omitted.)

See *Luth*, 28 B.R. at 566–67. All of these indicia of unity are present in the relationship between Crabtree and West Knoxville Investment Company, Inc.[2] *See also In re 1438 Meridian Place, N.W., Inc.* 15 B.R. 89 (Bkrtcy.D.D.C.1981), citing factors of "failure to observe corporate formalities, non-payment of dividends, the insolvency of the debtor corporation at the [material] time, siphoning of funds of the corporation by the dominant stockholder, nonfunctioning of other officers and directors, absence of corporate records, and the fact that the corporation is merely a facade for the operations of the dominant stockholder or stockholders." *Id.* at 96 n. 10, quoting 1 W. Fletcher, *Cyclopedia of the Law of Private Corporations*, § 41.3 at 43 (Cum. Supp.1981).

The court concludes that the petitioning creditors have met their burden of proving that West Knoxville is the *alter ego* and instrumentality of Crabtree and that the intermingling of their financial affairs makes it proper and necessary to treat them as one in this proceeding.

In addition to the evidence adduced at trial demonstrating the intermingling of the assets of Crabtree and West Knoxville, and the inability to separate their estates, negative inferences arising from Crabtree's failure to introduce evidence in his exclusive possession support the finding that West Knoxville is his *alter ego* and mere instrumentality.[3] Crabtree cannot defeat the petitioning creditors' claim by calling into question the sufficiency of their evidence when he has sole possession of any facts that could dispel the inferences properly drawn from testimony presented by the petitioning creditors' witnesses.

For example, in their attempt to prove that funds of Crabtree and West Knoxville were commingled and that Crabtree appropriated money from West Knoxville for his personal use, the petitioning creditors introduced evidence that the proceeds of substantial loans to West Knoxville were deposited directly into Crabtree's bank account. On cross-examination, counsel for Crabtree attempted to raise doubts about the significance of those transactions by asking the witnesses if they knew whether Crabtree gave West Knoxville consideration for those funds. That issue is certainly relevant and important. When a party has exclusive knowledge of facts and fails to testify to them, however, a negative inference can be drawn against the party. See *Hansel v. Purnell*, 1 F.2d 266, 273 (6th Cir.1924), *cert. denied*, 266 U.S. 617, 45 S.Ct. 98, 69 L.Ed. 470 (1924) (permitting inference of fraud to be drawn against defendants for failing to testify to facts peculiarly within their knowledge). In this case, Crabtree has knowledge, heretofore not made available to petitioning creditors, of the relevant facts. The negative inference to be drawn is that exculpatory evidence of consideration for the transfer of large sums of money simply does not exist.

In addition to the negative inference properly drawn from Crabtree's failure to

---

**2.** In this case, the absence of records satisfies the first criterion. Indeed, the absence of records renders impossible the task of accurately separating debts of Crabtree from those of West Knoxville.

**3.** The petitioning creditors met their burden of proof even without any consideration of these negative inferences.

introduce any evidence of consideration, the court may also draw a negative inference from his invocation of the Fifth Amendment privilege against self-incrimination to avoid testifying or turning over all books and records. See *Baxter v. Palmigiano*, 425 U.S. 308, 318, 96 S.Ct. 1551, 1558, 47 L.Ed.2d 810 (1976) (allowing a negative inference to be drawn from a prisoner's invocation of the Fifth Amendment of a prison disciplinary hearing); *Brink's Inc. v. City of New York*, 717 F.2d 700 (2d Cir.1983) (allowing negative inference against a party when ex-employees invoked the Fifth Amendment when called as witnesses).

The court can and does draw a negative inference that, if produced, the books and records of Crabtree and West Knoxville Investment Company, Inc. would not reveal any transfer of consideration by Crabtree to West Knoxville for sums of money appropriated from West Knoxville for his personal use.

■ Crabtree's failure to produce evidence that is in his exclusive possession or control and his invocation of the Fifth Amendment not only permit the court to draw negative inferences as to what such evidence, if produced, would reveal, but also allows the court to shift to Crabtree the burden of going forward with evidence regarding proof of West Knoxville Investment Company, Inc.'s corporate and financial independence from him.

Crabtree's Fifth Amendment assertion effectively prevents petitioning creditors from obtaining additional evidence that West Knoxville is his *alter ego*. His assertion of constitutional privilege also impairs the ability of the petitioning creditors to conclusively refute the implication by Crabtree's counsel that consideration may have been given to West Knoxville for monies transferred to Crabtree. The absence of conclusive evidence on this question does not preclude the court from finding an absence of consideration. Adverse inferences may be drawn in a civil action against a party who refuses to testify in response to probative evidence on the basis of constitutional privilege. *Palmigiano*, 425 U.S. at 318, 96 S.Ct. at 1558.

The Seventh Circuit adopted this rationale when it held that a bankrupt's assertion of the Fifth Amendment privilege against self-incrimination does not allow avoidance of the consequences of a failure to deny allegations of concealment of assets:

We are aware of Harris' and Silverstein's heavy reliance on their privilege against self-incrimination. We do not contest their privilege to rely on it but we do not believe they are entitled to use it as a sword permitting them to circumvent Rule 8(d), F.R.Civ.P., and thereby conceal the whereabouts of money belonging to the trustee in bankruptcy. (Footnote omitted.)

*In re Sterling-Harris Ford, Inc.*, 315 F.2d 277, 279 (7th Cir.1963), *cert. denied*, 375 U.S. 814, 84 S.Ct. 46, 11 L.Ed.2d 50 (1963).

Shifting the burden of producing evidence here is also consistent with general notions of the proper allocation of burdens of proof. As one commentator stated recently:

The legal system no longer automatically imposes the burdens of proof and production on the party with the burden of pleading the issue. Instead, fairness and experience guide the allocation of these burdens. Equitable factors to be considered include the *parties' relative knowledge of the facts and their access to evidence.* Accordingly, *courts sometimes shift the burdens to the defense on the ground that it possesses superior knowledge of the facts.* (Footnotes omitted.)

Heidt, The Conjurer's Circle—The Fifth Amendment Privilege in Civil Cases, 91 Yale L.J. 1062, 1128 (1982).

Bankruptcy courts have found it appropriate to shift the burden of producing evidence on myriad issues. *See, e.g., In re Barrett*, 2 B.R. 296 (Bkrtcy.E.D.Pa.1980) (once creditor makes *prima facie* showing on issue that debtor made false representations, burden of producing evidence shifts to debtor to show that he did not intend to

deceive the creditor); *Merman v. Miller,* 439 N.Y.S.2d 428, 82 A.D.2d 826 (N.Y.App. Div.1981) (debtor has burden of proving that conveyance is fair consideration for extinguishing antecedent debt or liability for child support and alimony); *A.V. Laurins & Co. v. Prince George's County,* 46 Md.App. 548, 420 A.2d 982, 987 (Md.Ct. Spec.App.1980) (circumstances can shift burden to grantee to prove he is a bona fide purchaser for value). It is fair and equitable for the burden to be shifted in this case as well.

Crabtree had the burden of going forward with evidence that West Knoxville is not his instrumentality or *alter ego,* and he failed to do so.[4]

IT IS, THEREFORE, ORDERED, ADJUDGED, AND DECREED, that the caption of this case be amended to read as follows:

In re

DAVID A. CRABTREE, also known as West Knoxville Investment Company, Inc.

Debtor

and it is further

ORDERED, that leave be, and it hereby is, granted to the petitioning creditors to file herein their Amended Creditors' Petition for Involuntary Chapter 7 Bankruptcy, attached to their motion to amend filed January 27, 1984, *nunc pro tunc* to July 14, 1983; and it is further

ORDERED, that the assets and liabilities of West Knoxville Investment Company, Inc. shall be administered as part of the proceeding of David A. Crabtree *nunc pro tunc* to July 14, 1983; and it is further

ORDERED, that creditors of West Knoxville Investment Company, Inc. be allowed 90 days within which to file proofs of claim.

---

4. In any event, as previously discussed, the petitioning creditors met their burden of persuasion even without shifting to Crabtree the burden of going forward with evidence within his control.