**In re LEASE–A–FLEET, INC., Debtor.**

**MORSE OPERATIONS, INC. d/b/a Lauderhill Leasing, Plaintiff,**

v.

**ROBINS LE–COCQ, INC., Defendant.**

Bankruptcy No. 91–12996S.

Adv. No. 92–0415S.

United States Bankruptcy Court, E.D. Pennsylvania.

July 15, 1992.

Patrick Stapleton, Rawle & Henderson, Philadelphia, Pa., for debtor.

Karen Lee Turner, Dilworth, Paxson, Kalish & Kauffman, Philadelphia, Pa., for plaintiff.

Richard E. Stabinski, Phillips and Phelan, Philadelphia, Pa., for defendant.

Robert D. Sayre, Philadelphia, Pa., for the Banks.

Frederic Baker, Philadelphia, Pa., Asst. U.S. Trustee.

### OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

### A.   INTRODUCTION

Presently before the court is a Motion for Summary Judgment ("the Motion"), *i.e.*, dismissal of this proceeding as a matter of law, filed by ROBINS LE–COCQ, INC. ("Robins"), the Defendant in the above-captioned adversary proceeding, in which MORSE OPERATIONS, INC. d/b/a LAUDERHILL LEASING ("Lauderhill"), a large creditor of LEASE–A–FLEET, INC. ("the Debtor"), seeks to "substantially consolidate" Robins, a non-debtor, with the Debtor's bankruptcy case.

Because we believe that the involuntary substantive consolidation of the case of a debtor with the non-case of a non-debtor is a type of relief fraught with conceptual problems, we believe that such relief, if ever appropriate, should be granted in only extraordinary situations, notably when the debtor and non-debtor are *alter egos* of one another and/or have totally commingled their assets. Finding that Robins and the Debtor have continually stood alone as totally distinct entities engaged in different businesses, and that no basis for this relief is stated, we will grant the Motion and dismiss this proceeding.

### B.   PROCEDURAL HISTORY

The instant adversary proceeding arises in connection with an underlying voluntary

Chapter 11 bankruptcy case commenced by the Debtor on May 30, 1991. The factual and procedural history of the bankruptcy case, through June 9, 1992, is set forth in our three prior Opinions: (1) A determination of the rights of Lauderhill to certain payments received by the Debtor post-petition, vis-a-vis the Debtor and Meridian Bank ("Meridian") and United Valley Bank ("UVB") (collectively Meridian and UVB are referenced as "the Banks"), reported at 131 B.R. 945 (Bankr.E.D.Pa.1991), *rev'd in part & aff'd in part,* 141 B.R. 63 (E.D.Pa. 1992), *appeal docketed,* No. 92–1402 (3d Cir.) (*"LAF I"*); (2) A preliminary decision on Lauderhill's rights to certain administrative claims, presently reported only at 22 B.C.D. 1600, 140 B.R. 840 (Bankr.E.D.Pa. 1992) (*"LAF II"*); and (3) A judgment in favor of the Debtor in the amount of $850,055.03 in an action challenging certain pre-petition payments to Lauderhill as preferences, decided June 9, 1992, 141 B.R. 853 (*"LAF III"*).

Since we issued *LAF III* several noteworthy events have transpired. Firstly, immediately following our Opinion in *LAF III,* Lauderhill filed an appeal of that matter with the district court. In addition, Lauderhill requested and was granted, by the Honorable Robert F. Kelly, Jr. of the District Court, an Order dated June 9, 1992, staying not only our decision in *LAF III,* but also "[p]roceedings relating to confirmation of any plan of reorganization" in this case. This Order halted the confirmation process which might have loosened the gridlock which we noted, in *LAF III,* at 856, was developing as a result of over-litigiousness of the parties, particularly Lauderhill.

Secondly, several events transpired in the consolidated suits including charges and counter-charges between the Debtor and Lauderhill, the reference of which has been withdrawn to the district court. On June 12, 1992, Judge Kelly granted certain aspects of Lauderhill's motion for summary judgment, but denied others, necessitating a two-week-long jury trial in those case(s). On July 3, 1992, the jury answered several Special Interrogatories in a manner which suggests that Lauderhill defrauded

and improperly ruined the Debtor's business and that the Debtor was entitled to damages in the amount of approximately $3.5 million dollars. This verdict, if reduced to judgment, could adversely affect not only Lauderhill's administrative claims, *see LAF II,* 22 B.C.D. at 1605, 140 B.R. 840, but could undermine and affect all of its claims in this case.

The instant proceeding, as we noted in *LAF III,* at 856, is among the most doubtful in merit of the mass of pleadings filed by Lauderhill to attempt to vindicate its stance in its dealings with the Debtor. It was filed on April 16, 1992. Trial on the matter was scheduled on June 10, 1992. Also scheduled on that date were hearings on confirmation of the Debtor's and Lauderhill's competing liquidating plans, Lauderhill's Objection to Proofs of Claim of Robins and Meridian Bank, and the Banks' Motion to change their vote rejecting the Debtor's Plan. Since Judge Kelly's Order of June 9, 1992, specifically stayed any further proceedings in connection with confirmation, we did not conduct the scheduled hearing on matters related to that issue. However, at that time, we did address procedural issues which arose in connection with the Objections to the Claims and the instant proceeding.

As a result of a colloquy with counsel on June 10, 1992, we entered Orders directing Lauderhill to file more specific Objections to the Proofs of Claim of Meridian and Robins by June 19, 1992, and scheduled hearings on the Objections on August 12, 1992, and July 27, 1992, respectively. The trial of this proceeding was consolidated with the hearing on the Objection to Robins' claim.

During that colloquy, Lauderhill brought to our attention an improperly-filed and consequently dormant motion filed by it which requested that Robins be directed to provide a list of its creditors in order that Lauderhill could in turn serve notice of the adversary proceeding upon the said creditors. An Objection to the Motion was voiced by Meridian, which claimed that it was a creditor of Robins and that the dispatch of such a notice could "destroy" Rob-

ins. However, since Robins offered no objection to sending out such notices, we entered an Order requiring Robins to supply the list to Lauderhill by July 19, 1992, but for Lauderhill to withhold sending the notices out until June 25, 1992, to allow Meridian a time period within which to file any objections to the service of notice upon Robins' creditors. Meridian ultimately did not to file any objections, and the notices were presumably served upon Robins' creditors by Lauderhill.

On June 19, 1992, Robins filed the Motion now before the court. On June 24, 1992, we issued an Order directing Lauderhill to file any Responses and Briefs in opposition to the Motion by July 6, 1992. On June 19, 1992, Robins also filed a Motion for Sanctions against Lauderhill under Federal Rule of Bankruptcy Procedure ("F.R.B.P.") 9011 ("the 9011 Motion"), arising out of Lauderhill's allegedly bad faith filing of this proceeding. On July 1, 1992, we ordered that the 9011 Motion should be briefed only after the decision in the proceeding was made. Nevertheless, on July 6, 1992, Lauderhill replied to the 9011 Motion as well as to the instant Motion. Attached to Lauderhill's Brief in reference to the Summary Judgment Motion are portions of the testimony in the trial before the district court, deposition testimony of Steven Wolk, the Debtor's President ("Steven"); Donald Wolk, Steven's father, the President of Robins and the former President of the Debtor ("Donald"); Eli Engel, an "independent accountant" hired by the Debtor; and Affidavits of David Crowthers and Kenneth Biddick, accountants engaged by Lauderhill to review the Debtor's financial records.

## C. DISCUSSION

### a. CRITERIA FOR SUBSTANTIVE CONSOLIDATION OF DEBTORS

This court recently addressed the concept of substantive consolidation generally at some length in *In re Orfa Corp. of Philadelphia*, 129 B.R. 404, 412–16 (Bankr. E.D.Pa.1991). In that decision, we observed, *id.* at 413–14, that

the Bankruptcy Code does not specifically authorize a court to grant consolidation. Instead, the court's power to substantively consolidate cases is derived from its general equitable powers under 11 U.S.C. § 105. *See, e.g., In re Augie/Restivo Baking Co., Ltd.*, 860 F.2d 515, 518 (2d Cir.1988); *In re Murray Industries, Inc.*, 119 B.R. 820, 828 (Bankr.M.D.Fla.1990); Comment, [*Substantive Consolidation in Bankruptcy: A Primer,*] 43 VANDERBILT L.REV. [207,] at 210–11, 220–31 [ (1990) (hereinafter cited as "Comment") ].

We identified three sets of "tests" for determining when consolidation was appropriate. Firstly, we observed that,

[i]n *In re F.A. Potts & Co.*, 23 B.R. 569, 572 (Bankr.E.D.Pa.1982), Chief Judge Twardowski adopted a two-part test in determining whether consolidation was appropriate:

1. The applicants must demonstrate that there is a necessity for substantive consolidation or a harm to be avoided by the use of the equitable remedy of substantive consolidation; and

2. The benefits of substantive consolidation must outweigh the harm to be caused to objecting creditors.

*Id.* at 414. Secondly, we noted that

[i]n *Augie/Restivo, supra,* 860 F.2d at 518, the Second Circuit articulated a test involving two critical factors:

(i) whether creditors dealt with the entities as a single economic unit and "did not rely on their separate identity in extending credit;" or (ii) whether the affairs of the debtors are so entangled that consolidation will benefit all creditors.

*Id.* Finally, we stated that

[o]ther courts have designated as many as seven factors which have been cited as factors to be considered in determination of a motion for consolidation:

(1) The presence or absence of consolidated financial statements;

(2) The unity of interest of and ownership between various corporate entities;

(3) existence of parent and intercorporate guarantees on loans;

(4) degree of difficulty in segregating and ascertaining individual asset and liabilities:

(5) existence of transfers of assets without formal observance of corporate formalities;

(6) commingling of assets; and

(7) profitability of consolidation at a single physical location.

*See, e.g., Holywell Corp. v. Bank of New York,* 59 B.R. 340, 347 (S.D.Fla.1986); *Murray Industries, supra,* 119 B.R. [820,] at 830; *In re Gainesville P–H Properties, Inc.,* 106 B.R. 304, 305–06 (Bankr.M.D.Fla.1989); *In re Baker & Getty Financial Services, Inc.,* 78 B.R. 139, 142 (Bankr.N.D.Ohio 1987); *In re Donut Queen, Ltd.,* 41 B.R. 706, 709 (Bankr.E.D.N.Y.1984); and Comment, *supra,* 43 VANDERBILT L.REV. at 215–16.

*Id.* at 414–15.

Applying a test which thus suggested a broad examination of the equities, probably most similar to the *Potts* test, *accord, e.g., Eastgroup Properties v. Southern Motel Associates, Ltd.,* 935 F.2d 245, 248–50 (11th Cir.1991), we allowed the plan proponents, in *Orfa,* to present a plan of reorganization which effectively consolidated three debtor entities. Most significant in our decision were the following operative facts: (1) the proponents' efforts were opposed by only one out of the significant different creditor blocks and entities. 129 B.R. at 412; (2) there was significant evidence that the three consolidated entities, all of which were debtors, were treated as a single entity by the debtors themselves and by most of the entities which dealt with them.[1] *Id.* at 415; and (3) (most significantly) in light of the plan voting, no party was adversely impacted by the consolidation. *Id.* at 412, 415–16.

The Comment, 43 VANDERBILT L.REV. at 208, begins by warning that

Substantive consolidation is a powerful vehicle in bankruptcy by which the assets and liabilities of one or more entities are combined and treated for bankruptcy purposes as belonging to a single enterprise. Because substantive consolidation vitally affects the rights and interests of parties involved in bankruptcy proceedings, it is termed a matter "pregnant with consequences" and should be used with caution (citation omitted).

*Accord, e.g., Augie/Restivo, supra,* 860 F.2d at 518.

b. CONCEPTUAL DIFFICULTIES IN CONSOLIDATION OF A NON–DEBTOR WITH A DEBTOR'S CASE

However, as careful as the courts must be in allowing substantive consolidation of *debtors* to occur even when a plan proponent or a debtor so requests and a consensus of creditors concur, the caution must be multiplied exponentially in a situation where a consolidation of a debtor's case with a non-debtor is attempted, by a single party which, like Lauderhill, is a creditor of the debtor only and whose efforts are not joined by any other interested parties.

Addressing consolidation of a debtor's case with a non-debtor entity, the Comment states that

[c]onsolidation of debtor and nondebtor entities, although possible, should occur only in unusual circumstances. Such consolidation threatens solvent entities. A separate, solvent entity may be forced into liquidation through consolidation with a bankrupt affiliate, further threatening the solvent entity's creditors.... Finally, in order to fulfill procedural due process requirements, the bankruptcy court may not take any action that would prejudice the creditors of the nondebtor without giving them an opportunity to be heard (citations omitted).

5 COLLIER ON BANKRUPTCY, ¶ 1100.-06, at 1100–48 (15th ed. 1992), states, to the same effect, that

---

**1.** The party opposing consolidation was the only party that claimed that the separate debtor-entities were significant to it, and were dealt with by it accordingly. And we were skeptical of that assertion. *See id.* at 412.

[w]hile consolidation of debtor and non-debtor entities is possible, it should be undertaken only in the most unusual circumstances. Ordinarily if assets have been fraudulently transferred, the debtor's remedy will be an action to recover a fraudulent conveyance under section 544 or 548. If the assets were held without colorable claim, the debtor can seek a turnover order under section 542 of the Code.

Collier emphasizes, in particular, the need for notice to all of the creditors of the non-debtor entity, who could be significantly affected by any sort of consolidation with a debtor. *Id.* at 1100–48. *See In re Foley*, 4 F.2d 154, 156–57 (9th Cir.), *cert. denied sub nom. Withers v. White*, 269 U.S. 554, 46 S.Ct. 18, 70 L.Ed. 408 (1925). For this reason, we were careful to see that notice of this proceeding was provided to all creditors of Robins prior to trial. Of course, such notice has the "side effect" of alarming Robins' creditors that Robins is involved, at least in some way, with a bankruptcy case.

We have several conceptual difficulties with the prospect of an involuntary consolidation of a non-debtor with the case of a debtor. The first is the potential for circumvention of the procedures set forth in the Bankruptcy Code at 11 U.S.C. § 303 for the commencement of involuntary cases. Section 303 is not user-friendly. If a debtor has more than twelve (12) creditors, the filing of an involuntary petition may be accomplished only

> by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute, or an indenture trustee representing such a holder, if such claims aggregate at least $5,000 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims; ...

If an involuntary petition is contested, the petitioners then bear the further burden of showing that either a custodian, receiver, or agent of the putative debtor was appointed within 120 days of the filing, 11 U.S.C. § 303(b)(2), or that "the debtor is generally not paying such debtor's debts as such debts become due unless such debts are the subject of a bona fide dispute; ..." 11 U.S.C. § 303(h)(1).

Furthermore, because of the perceived unfair detrimental effect that an unjustified involuntary bankruptcy filing can have upon a debtor's affairs, unsuccessful involuntary petitioners are normally liable for the putative debtor's costs and reasonable attorney's fees in defending the petition. *See* 11 U.S.C. § 303(i)(1); and *In re Ross*, 135 B.R. 230, 234–37 (Bankr.E.D.Pa.1991). Moreover, if the involuntary filing is found to have been in "bad faith," any damages caused to the putative debtor thereby, and, in addition, punitive damages, may be awarded to the debtor. 11 U.S.C. § 303(i)(2).

An attempt to involuntarily consolidate a non-debtor with a debtor end runs all of the foregoing stringent requirements and rather harsh consequences for failure provided in § 303 in connection with the filing of an involuntary petition. We note that Lauderhill does not allege that it is even *a* creditor of Robins. To succeed in an involuntary filing against Robins, Lauderhill would have had to establish the existence of an undisputed, non-contingent debt of Robins to it. Moreover, since Robins is apparently a sizable entity, likely to have far more than twelve (12) creditors, Lauderhill would have to be joined by at least two undisputed, non-contingent creditors of Robins in its undertaking. If the petition were opposed, since Robins is alleged to be a solvent entity and is not subject to any sort of custodial proceeding, Lauderhill would face the difficult prospect of proving that Robins is not generally paying its debts. Finally, the consequences of failure would include subjection to the remedies provided in 11 U.S.C. § 303(i).

Therefore, if involuntary consolidation of Robins with the Debtor would be allowed, circumvention of the provisions and strongly-established policies of 11 U.S.C. § 303 would be sanctioned.

Another difficulty arises from consideration of the applicability of protections for,

and rights of, debtors under the Code to non-debtors attached to a case by consolidation, such as the automatic stay provided by 11 U.S.C. § 362, the avoiding powers of 11 U.S.C. §§ 542–49, or the right of the debtor to reorganize under Chapter 11 of the Code, to name a few. These are a few of the benefits of debtor-status, even in an involuntary case, which counter the detriment attached to "being bankrupt."

It is not even clear exactly what of Robins would actually be consolidated with the Debtor's case if the relief sought by Lauderhill were granted to it. Lauderhill's Complaint does not clarify this mystery, as it merely requests that the court "substantively consolidate" Robins and the Debtor. We therefore query: if this relief were granted, would Robins then have a bankruptcy "case" or would it arrive in this court, in some other form, as a non-debtor somehow attached to the Debtor's case? It seems to this court that it is cruel and unusual, among other things, for an entity to be in some way appended as a party to a debtor's case, but to not have the benefit of the automatic stay, avoidance powers, or the right to formulate a plan of reorganization, as does any debtor.

It is therefore not surprising to this court to find that placing an involuntary non-debtor consolidatee in such an unusual circumstance, betwixt and between the Bankruptcy Code, should be reserved for unusual circumstances which might justify such a conceptually-strange measure. It is also not surprising that some courts, though based on purely jurisdictional concerns rather than what might be termed the foregoing equitable and practical concerns, have refused to allow the consolidation of a non-debtor with a debtor's case, even at the request of the debtor, see In re DRW Property Co., 54 B.R. 489, 494–97 (Bankr.N.D.Tex.1985), or of a debtor's trustee. See In re Alpha & Omega Realty, Inc., 36 B.R. 416, 417 (Bankr.D.Idaho 1984).

### c. CASES WHERE CONSOLIDATION OF A NON–DEBTOR WITH A DEBTOR'S CASE WAS ALLOWED

However, Lauderhill does cite to a few scattered authorities where, without much consideration of the equitable and practical concerns expressed herein, substantive consolidation of a non-debtor with a debtor's case was permitted. These authorities include Sampsell v. Imperial Paper & Color Corp., 313 U.S. 215, 61 S.Ct. 904, 85 L.Ed. 1293 (1941); Soviero v. Franklin Nat'l Bank, 328 F.2d 446 (2d Cir.1964); In re Tureaud, 59 B.R. 973 (N.D.Okla.1986); In re Munford, 115 B.R. 390 (Bankr.N.D.Ga. 1990); In re Crabtree, 39 B.R. 718 (Bankr. E.D.Tenn.1984); and In re 1438 Meridian Place, N.W., Inc., 15 B.R. 89 (Bankr.D.D.C. 1981).

All that was at issue in Sampsell was the proper status of a claim of a creditor of a corporation which was effectively consolidated with the bankruptcy case of the corporation's principal. 313 U.S. at 217, 61 S.Ct. at 906. A prior order of the bankruptcy court directing that the corporation's assets should be marshalled for the benefit of the principal-debtor's creditors, on motion of the debtor's trustee, which was effectively the consolidation order, was not appealed and hence its validity was not in issue. Id. at 216–17, 61 S.Ct. at 905–06. This "consolidation" order was, moreover, based on a finding

> that the corporation was "nothing but a sham and a cloak" devised by Downey "for the purpose of preserving and conserving his assets" for the benefit of himself and his family; and that the corporation was formed for the purpose of hindering, delaying and defrauding his creditors. Id. at 217, 61 S.Ct. at 906.

The consolidation motions in Soviero and Tureaud were, like Sampsell, brought by trustees of the respective debtor-entities. Moreover, the Soviero order consolidated, with a parent corporate entity, thirteen affiliates whose estates were found to be

> but instrumentalities of the bankruptcy with no separate existence of their own. Consequently, there existed a unity of interest and ownership common to all corporations, and that to adhere to the separate corporate entities theory would result in an injustice to the bankruptcy's creditors.

It is difficult to imagine a better example of commingling of assets and functions and of the flagrant disregard of corporate forms than as here demonstrated by the bankrupt. One gains the distinct impression that the bankruptcy held up the veils of the fourteen collateral corporations primarily, if not solely, for the benefit of the tax gatherer, but otherwise completely disregarded them....

328 F.2d at 448.

*Tureaud,* like *Sampsell,* involved a motion to consolidate any individual debtor's corporate creations with his case. The court found "inadequate or inconsistent records" of all entities in issue and affirmed the bankruptcy court's finding

that "[i]t is impossible to accurately trace all transfers of funds and to untangle and unravel the affairs of the Affiliates and Tureaud." [*In re Tureaud,*] 45 B.R. [658] at 661 [ (Bankr.W.D.Okla.1985) ].

*Crabtree* and *Meridian Place* are somewhat more similar to the instant situation than *Sampsell, Soviero,* and *Tureaud.* Both were decisions to effectively consolidate cases of non-debtors with that of a debtor on motion of *creditors.* However, we note that, in each case, the movants were *several* parties, rather than a single creditor. In *Crabtree,* the court specifically found that no creditor objected to the relief sought, 39 B.R. at 720, which is in contrast to the vigorous opposition voiced by Meridian to the instant proceeding. Also, *Crabtree* was based upon the findings that the non-debtor target corporations were both the *"alter ego* and instrumentality of debtor," 39 B.R. at 720, and that the affairs of the debtor and the corporations

are so intermingled and entwined that their separate assets and liabilities cannot be ascertained, and any attempt to separate their financial affairs would consume substantial assets of the estate with no considerable likelihood that such an exercise would be successful.

*Id.* at 721.

In *Meridian Place,* the movants sought to join other corporate entities owned by the same principals to the case of a corporate debtor. The court found that the evidence was sufficient to pierce the corporate veils of non-debtor entities on the basis of its findings that

it is clearly impossible to reconcile the income and expenses as they relate to the operations and management of the debtor's various rental parcels. It is further clear from the evidence of record, particularly with reference to the context of the other corporate entities, that all of these various corporations were and are, in fact, the alter ego of the principal officers, ... There has been no attempt to comply with any corporate formality, other than the fact of incorporation itself....

15 B.R. at 93–94.

Finally, *Munford* was a proceeding brought by the *debtor,* a licensor of a chain of convenience stores and an owner of about 500 licensed stores, to consolidate the affairs of a non-debtor entity, which operated approximately 343 similarly-licensed stores, into its bankruptcy case. Noting fifteen (15) separate allegations by the debtor of the manner in which the affairs of the non-debtor entity were combined with those of the debtor, the court denied a motion of the creditor's committee of the debtor to dismiss the proceeding. 115 B.R. at 392–94. The court rejected the committee's argument that a non-debtor's assets may never be consolidated with those of a debtor, noting that the argument that the filing circumvented 11 U.S.C. § 303 was not applicable because the proceeding was not initiated, as is the instant proceeding, by creditor interests. *Id.* at 397.

d. THE INSTANT ALLEGATIONS OF LAUDERHILL WOULD BE INSUFFICIENT TO SUPPORT CONSOLIDATION OF DEBTORS, LET ALONE CONSOLIDATION OF NON–DEBTOR ROBINS WITH THE CASE OF THE DEBTOR

We can now compare the allegations made by Lauderhill in the instant Complaint to those of the cases wherein suffi-

ciently "unusual circumstances" were found to be present to grant the extraordinary relief sought. The Complaint alleges as follows:

1. Donald, though no longer the titular principal of the Debtor, remains the actual principal of both.

2. The Debtor and Robins share office spare and the corporations have "overlapping" officers and directorships.

3. For several years, Robins provided substantial financial assistance to the Debtor, without the formality of loan documents. Cross-guarantees of Robins and Donald were required by Meridian as well as by Lauderhill in loans to the Debtor.

4. The Debtor engaged in several transactions for printing services (the business of Robins) with entities owned by Donald other than Robins. The volume of intercompany transfers makes it impossible to determine whether fair consideration was given.

5. The Debtor's financial difficulties appear to result from Robins' decline in its financial assistance to it.

6. Corporate form and formalities were not usually observed in dealings between the Debtor and Robins.

In a Pre–Hearing Memorandum, Robins posited twenty-nine (29) different elements which allegedly indicated that substantive consolidation of the Debtor and Robins would be inappropriate even if both were debtors. Among these were the distinction between the businesses of the two (Robins is in the business of "printing and real estate;" the Debtor is an intermediate lessor-lessee of motor vehicles); all books and records of the two entities are kept separately; and neither Meridian nor Lauderhill ever dealt with these two corporations as a single entity. In the instant Motion and its supporting Memorandum of Law, Robins emphasizes that, in obtaining guarantees from Robins for the Debtor's obligations to it, Lauderhill was clearly treating the Debtor and Robins as separate entities. The failure of Robins to treat the two corporation as separate entities is alleged to be a sufficient basis to grant the instant Motion and dismiss the Complaint.

Some courts have indeed relied very heavily on this issue of whether creditors dealt with debtors as separate entities in deciding whether to consolidate their cases. *See In re Hemingway Transport, Inc.,* 954 F.2d 1, 11–12 (1st Cir.1992); and *Augie/Restivo,* 860 F.2d at 518–19. We agree that this is an important factor, but we do not believe that it should be the sole or decisive factor. *Compare Orfa, supra,* 129 B.R. at 412–16 (substantive consolidation allowed despite claim of objector that it dealt with debtor entities separately. *But see* page 872 n. 1 *supra* ).

However, our principal difficulties with Lauderhill's position in this action are other deficiencies and the overwhelming cumulative effect of same, both legally and philosophically. We do not think that the allegations of the Complaint are sufficient to state a basis for substantive consolidation of Robins and the Debtor, even if they both were debtors, under any of the three recognized criteria appearing in the cases. In light of the fact that Robins is not a debtor and that an extremely strong showing of "unusual circumstances" is required to justify the relief sought renders the Complaint clearly inadequate to support the relief requested. Coming as it does as an apparent tactical ploy in the context of matters already over-litigated, by Lauderhill in particular, this Complaint must be viewed by this court as a possibly abusive filing, violative of F.R.B.P. 9011. The fact that it is an indirect attempt to file an involuntary case against Robins, which, if attempted directly, would be subject to sanctions under 11 U.S.C. § 303(i), renders the outcome of the 9011 Motion the only close question in the proceeding. We will expend the July 27, 1992, hearing on that issue, as well as Lauderhill's Objection to Robins' claim.

The Complaint fails to meet the *Augie/Restivo* criteria. *See* page 871 *supra.* The allegations of the Complaint suggest, as Robins argue, that Lauderhill did deal with Robins as an entity separate from the Debtor. Meridian obviously believes that, in its transactions with Robins, it dealt with

an entity separate from the Debtor. The Complaint's bald allegations that it, as one creditor, dealt with Robins and the Debtor as a single entity are hence insufficient to satisfy this important element. Similarly, the allegations of "entanglement" are very mild. Common ownership (which is not the case in any event), overlapping (as opposed to identical) directorships, common use of space, and a substantial yet informal debtor-creditor relationship (as opposed to an intermingling of assets which would make the very concept of a loan unnecessary), separately or in concert, are patently insufficient basis on which to establish an entanglement of affairs which would render consolidation of the entangled entities of benefit to all creditors. Moreover, Lauderhill, like the party objecting to consolidation in *Orfa*, is isolated. It is difficult to see how *any* community of benefit to *all* creditors can be seriously alleged in such circumstances.

Some of the seven *Holywell Corp.* factors, *see* pages 871–872 *supra*, are present, notably (2) (unity of interests); (3) existence of guarantees on loans), and (5) (transfers without formalities). However, the more important factors, (1) (consolidation of financial statement), (4) (difficulty of separating assets), (6) (commingling of assets), and (7) (profitability to all creditors), are not alleged or are not asserted with any degree of particularity.

Finally, the *Potts/Orfa* equitable considerations, *see* pages 871–872 *supra*, are totally lacking. The need for consolidation is not made clear. The primary harm alleged by Lauderhill from allowing the entities in issue to remain separate appears to be a contention that preferences and fraudulent conveyances of the Debtor to Robins will be more easily reached. However, consolidation may *eliminate* rather than create a right to attach any preference and fraudulent conveyance claims among the consolidated parties *inter se*. Moreover, certain of the allegations seem to be that Robins was overly beneficial to the Debtor, rather than, as one would expect to support such claims, vice-versa. Furthermore, we note that Lauderhill has filed a motion to pursue preference and fraudulent convey-

ance actions against Robins and other Wolk-owned utilities on behalf of the Debtor, which is listed for a hearing on July 15, 1992. As Collier suggested, *see* page 873 *supra*, these measures are a more conservative and, we believe, more appropriate means of achieving the result of attacking inter-company transfers. *See LAF III, supra*, at 860 (we noted that, as of the date of that Opinion, Lauderhill had not been asked for permission to bring such actions; Lauderhill's motion may have been filed only in response to these observations).

The isolation of Lauderhill in pursuit of this proceeding is, again, significant. If consolidation were truly a benefit to all or most of the creditors of the Debtor or Robins, we would expect at least some of them to support Lauderhill's position. None have. Meridian actively expressed opposition.

The apparently tactical nature of this proceeding is another important equitable factor. Lauderhill appears to have adopted the strategy that filing of a large quantity of actions and motions will wear down the opposition. This strategy worked only in the early stages of this case, when the Debtor's initial, apparently-distracted counsel, since disbarred from practice, was apparently unable to deal with the onslaught of matters raised against his client by Lauderhill. It is, however, the antithesis of justice and the proper function of the judicial system to allow such tactics to prevail.

It is therefore clear to us that the Complaint's allegations, on their face and certainly when considered in light of the facts well known to the court from the numerous matters previously before it arising from this case, are insufficient to support substantive consolidation, even were Robins a debtor. Patently, they are insufficient to support the consolidation of Robins, somehow, somewhere, or anywhere, into the Debtor's case.

We believe that much is to be said for the position of *DRW Property, supra;* and *Alpha & Omega, supra,* that substantive

consolidation of a debtor and a non-debtor should never be permitted. This court adds to the argument of those courts the practical observations made by this court at pages 873–874 *supra*. We feel that cases such as *Munford*, which rejects the reasoning of those cases, fail to consider that requiring interested parties to seek relief in more conventional, expressly Code-sanctioned methods is always preferable. It is not clear to us why it would be burdensome or wrong to compel the *Munford* non-debtor to file its own case, or, if it was not so inclined, to require the debtor to file an involuntary case against it, rather than allowing the creation of a new animal which may turn out to be a monster. The best that can be said about the *Munford* result is that it appears to have been harmless, and that the equities may favor the result, per the *Potts/Orfa* test for consolidation of debtors.

However, the facts of the instant matter are so far from those of *Munford, Crabtree,* and *Meridian Place* as to make a comparison almost impossible. Robins is clearly not the *alter ego* of Donald or the Debtor, or vice-versa, and Lauderhill cannot and does not so allege. Commingling of assets, such as occurred in those cases, is not alleged except in general terms which belie a close similarity to the rather egregious factual settings in these cases. Robins is clearly distinct from the Debtor in its business operations and actual ownership.

The relationship between the Debtor and Robins is clearly distinct from a "sham operation," which is completely controlled by a debtor, the archetype which was present in *Sampsell, Soviero,* and *Tureaud.* Neither the Debtor nor Robins are alleged to be shams or corporate shells. They are simply different entities controlled by members of the same family which have, not surprisingly, had numerous dealings *inter se.* In itself, these facts do not come close to supporting the relief sought.

D. CONCLUSION

We will therefore enter an Order granting Robins' Motion for Summary Judgment, and directing the dismissal of this proceeding. We will further indicate, in that Order, that we will reserve the July 27, 1992, trial date for hearing Lauderhill's Objection to Robins' proof of claim and the 9011 Motion against Lauderhill arising out of the filing of this proceeding, and we are providing the parties with an opportunity to further brief the 9011 Motion in the interim period.